UNITED STATES v. FORDYCE et al.

(District Court, W. D. Kentucky. May 25, 1903.)

1. POSTMASTERS—LIABILITY FOR STAMPS AND FUNDS STOLEN BY BURGLARS.
Under the settled law that a postmaster is liable on his bond for stamps and money order funds received by him and not accounted for, although they may have been lost through burglary, and without fault or negligence on his part, a postmaster is not relieved from such liability by the fact that the United States furnished the building and the safe therein, both of which he was required to use, and from which the property was taken by the burglars.

Action on Bond of a Postmaster.

R. D. Hill, U. S. Atty.

Fairleigh, Straus & Fairleigh, Sims & Grider, and Wright & McElroy, for defendants.

EVANS, District Judge. By a stipulation in writing, this action at law was submitted to the judgment of the court without the intervention of a jury. It is a proceeding against Edward U. Fordyce as principal, and his codefendants as sureties, on his bond as postmaster at Bowling Green, Ky. The bond sued on is in the form prescribed by section 3834, Rev. St. [U. S. Comp. St. 1901, p. 2610],

and binds the defendants for the faithful performance by the postmaster of all the duties imposed upon him by law and by the rules and regulations of the post office department. His duties in respect to postage stamps and the proceeds of their sale are fixed by sections 3918, 3919, Rev. St., and possibly others, and his duties in respect to the money order funds are fixed by sections 3846, 3847, Rev. St. [U. S. Comp. St. 1901, p. 2615], and by regulations. Obviously it was the duty of the postmaster to account for the stamps and money which came to his hands as such, but the petition alleges that he has not done so. On the contrary, it is alleged that many stamps and a large sum of money have not been accounted for nor paid over, and the evidence heard at the trial unquestionably established the truth of those allegations. It was attempted by the defendants to avoid the judgment against them which would necessarily follow the proof of those facts. by showing, in the second and fourth paragraphs of their answer, that the post office had been entered at night by burglars and robbed without the fault of the postmaster, and that the money and stamps not accounted for were all lost in that way, but upon the demurrer of the plaintiff those paragraphs of the answer were held not to present any defense whatever. This ruling by the court was made upon the principles announced in the cases of the United States v. Prescott, 3 How. 578, 11 L. Ed. 734; United States v. Morgan, 11 How. 154, 13 L. Ed. 643; United States v. Dashiel, 4 Wall. 182, 18 L. Ed. 319; Boyden v. United States, 13 Wall. 17, 20 L. Ed. 527; and Bosbyshell v. United States, 23 C. C. A. 581, 77 Fed. 948—which unite in holding that a postmaster or other officer of the United States under similar circumstances is not a mere bailee for hire of the funds committed to his charge as an officer, and that he is not released from liability merely because he uses the degree of care exacted from a bailee of that character, nor because he has not been negligent, nor because he has been robbed, or the property otherwise stolen from him. The general rule in the premises is clearly established, nor does the court think that the averments in the second and fourth paragraphs of the answer to the effect that the United States furnished a building for the post office, and put a safe therein for the postmaster, and gave him no option except to use them both, in any way weaken the authority of the cases cited, even if, as alleged in the answer, the office was required by the government to be and was in fact kept in the building, and the money and the stamps in the safe thus supplied. . It is not alleged nor pretended that the building and the safe did not add to the security of the property and money in the post office, nor that the using of them in any wise increased the risk of the postmaster. It certainly may be supposed probable that they contributed to the safety rather than added to the risk of the officer in the care of the property and money placed in his hands, and particularly as it is not alleged in the answer that either the building or the safe was unsuitable for the purposes designed, nor that the postmaster gave the plaintiff any notice that such was the fact or made any protest against the use of either. Indeed, it would be most remarkable if those postmasters to whom buildings (sometimes most

elaborate and expensive) and vaults and safes are supplied by the United States should be exempt from liability for losses resulting from robberies, while those postmasters who are not supplied with either should be held to a strict responsibility. The law cannot make such a difference, or, if it made any, surely it would be the other way.

It may be added that the only way provided by law for a postmaster to obtain relief in cases of robbery or larceny is by applying to the Postmaster General, under the provisions of the act of May 9, 1888, 25 Stat. 135, c. 231 [U. S. Comp. St. 1901, p. 2616], in which cases if the evidence is satisfactory to that officer he may, in his discretion, allow the postmaster credit for the amount thus lost. But with this exercise of the grace and favor of the United States in such cases the courts have nothing to do. It is committed to another tribunal, which alone has authority in the premises, and that, too, as a matter of discretion which the courts have no power to control in that officer nor to exercise themselves.

The evidence heard at the trial made a prima facie case for the plaintiff, and there is no apparent reason why the prayer of the petition should not be granted.

Judgment may accordingly be entered in favor of the plaintiff for $4,441.29, with interest from June 6, 1901, until paid, and the costs of the action.