PEOPLE ex rel. LETTS et al. v. COLLIER et al.

(Supreme Court, Appellate Division, Second Department. January 9, 1903.)

1. COUNTIES—OFFICERS—REGISTER'S CLERKS—CONFIDENTIAL POSITIONS—CIVIL SERVICE.

Laws 1901, c. 706, § 4, requires the register of Kings county, before entering on the duties of his office, to file a bond conditioned that he shall faithfully discharge the duties of his office, and provides that in case of any official misconduct, default, or omission of duty on the part of such register, an action on such bond may be begun and prosecuted by the person or corporation injured or damaged thereby. Section 2 provides for about 30 subordinates, and authorizes the register to appoint as many copyists and recording clerks as may be necessary, and the register is authorized to require a bond from each employé so appointed. *Held* that, since the register was responsible on his bond for any errors or defaults of his subordinates, the position of a clerk charged with the duty of depositing each day the moneys received in the office, answering subpœnas duces tecum, and collecting the outstanding credit accounts of the register, was a position of trust and confidence, and was not, therefore, within the jurisdiction of the civil service commission.

2. SAME—CUSTODIAN OF SEAL AND UNRECORDED PAPERS.

The position of the custodian of the register's official seal, and of all the papers left for record, before they were recorded, and of all papers relating to proceedings for the opening of streets, and charged with the duty of affixing the official seal to an instrument and presenting the same to the register for his signature and certificate after the same had been recorded and compared, is a position of trust and confidence, and not within the jurisdiction of the civil service commission.

3. SAME—COMPARERS.

The position of a comparer in the office of the county register, who, with a fellow, takes the record made by the copyist, and the instrument, and verifies the work, correcting all errors, comparing the book with the instrument, and then certifies the correctness of the record, whereupon, and in reliance on such certificate, the official seal of the register is affixed to the instrument, and the certificate of record is also affixed and signed by the register, is a position of trust and confidence, not within the jurisdiction of the civil service commission.

Appeal from special term, Kings county.

Mandamus by the people, on relation of Felix Letts and others, against William M. Collier and others, constituting the state civil service commission, to compel the striking of the positions held by relators in the office of the register of Kings county from the competitive class, and to require them to place said positions in the exempt class, etc. From an order granting a peremptory writ, the commission appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Elton D. Warner, for appellants.

Hugo Hirsh, for respondents.

Franklin M. Danaher, for interveners.

JENKS, J. The question in these cases is whether the positions of the respective relators are confidential, and therefore exempt from competitive examination. Each relator shows the duties incident to the position held by him, and the answering affidavit is, in effect, that the state civil service commission believes that the position is not con-

fidential, and that it is possible to fill it by competitive examination. In People v. Lyman, 157 N. Y. 368, 52 N. E. 132, the court, at page 387, 157 N. Y., and at page 139, 52 N. E., says:

"Surely the civil service commission cannot change the actual status of a position by declaring one which is actually confidential not to be so; nor is it vested with power to repeal a valid statute, or to practically annul it, by declaring a position to be competitive when the law has provided otherwise, and the position is plainly of a strictly confidential character."

I am of opinion that these positions are confidential, for the following reasons: I think that the legislature has cast liability upon the register for the official work of his office, certified by him, although the details of such work are done by his subordinates. Section 4 of chapter 706 of the Laws of 1901, in part, provides as follows:

"The register of the county of Kings shall, before entering upon the duties of his office, file, in the office of the district attorney, of the county of Kings, a bond to the people of the state of New York, approved as herein provided, in the sum of twenty thousand dollars, with not less than two sureties, conditioned that the said register will faithfully discharge the duties of his office, and in case of any official misconduct, default, omission of duty on the part of the said register, an action upon such bond may be begun and prosecuted to judgment by the person or corporation injured or damaged by such official misconduct, default, mistake or omission of duty."

The important assurance to the individual who has business with that office is that such business shall be done without mistakes, for mistakes in such matters may often lead to serious consequences. Although work is certified by the register, none supposes that he personally does or can do any part of the details thereof. The legislature recognizes this course of business, in that by section 2 it not only provides for some 30 specified subordinates, but also authorizes the register to appoint as many copyists and recording clerks as may be necessary. If the purpose of this provision is to assure the individual against the consequences of mistakes in the work of the register, when officially certified by him, it is of no moment, so far as the individual is concerned, whether the work is done by one person or another. And if such be the purpose of the provision, it seems absurd to hold the register responsible under the statute for only such work of which the details were wholly done by him, for the reason that none supposes that there is any work of such character. The individual looks to the certificate of the register, who, being compelled to certify to the work, has an opportunity to oversee and to safeguard it. And it must be remembered that responsibility of the public officer is wholly based upon mistakes; that he is afforded by the statute the protection of a personal bond from each subordinate in such amount as he may prescribe, and that the scheme of the statute is to assure the innocent individual against loss consequent upon the mistakes of another. If the scheme of the statute is not, then, to hold the register responsible for the omissions or commissions of his subordinates, in work certified by him, no good reason appears why the register should be clothed with the power to exact, for his personal benefit, bonds from each of his subordinates. Under statutes which provided that such officials should be legally liable for all damages resulting from errors, inaccuracies, or mistakes in their certified returns, it was held in one

case that the county clerk, and in another the register, would be legally liable, notwithstanding that the work certified was done by subordinates in their respective offices. Kimball v. Connolly, 2 App. Dec. 504; Van Schaick v. Sigel, 60 How. Prac. 122. The responsibility thus declared is a legislative application of the doctrine of respondeat superior. But this doctrine is logically based upon the right of the superior to select his subordinates, and to dismiss them if careless, incompetent, or unskillful (Maxmilian v. Mayor, etc., 62 N. Y. 161, 20 Am. Rep. 468; Ham v. Mayor, etc., 70 N. Y. 459); and it would seem an anomaly to hold that the register should be declared responsible for the acts of certain subordinates, and yet have no untrammeled choice in the selection or retention of them. The principle behind the policy of the statute is stated in Mechem on Public Officers (section 664) as follows:

"But on the other hand, it is equally well settled that where the law imposes upon a public officer the performance of ministerial duties, in which a private individual has a special and direct interest, the officer will be liable to such individual for any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it properly."

In People v. Lyman, supra, the definitions of "confidential" given in People v. Palmer, 152 N. Y. 217, 220, 46 N. E. 328, 329, and in Chittenden v. Wurster, 152 N. Y. 360, 46 N. E. 857, 37 L. R. A. 809, are adopted:

"The statute which we have under consideration has reference to officials, and the confidential relations mentioned undoubtedly have reference to official acts, and include not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill and integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another, their relations become confidential." And again: "We then were of the opinion that where the duties of the position were not merely clerical, and were such as were especially devolved upon the head of the office, which, by reason of his numerous duties, he was compelled to delegate to others, the performance of which required skill, judgment, trust, and confidence, and involved the responsibility of the officer or the municipality which he represents, the position should be treated as confidential."

I now examine the character of the duties of each relator in view of these definitions. Mr. Nathan deposits each day the moneys received in the office of the register, answers the subpœnas duces tecum, and collects the outstanding credit accounts of the register. These duties require certain trust and confidence. The register, under the statute, is bound to account for and pay into the city treasury all receipts of his office. May he not be held liable to the city, upon the principle of Tillinghast v. Merrill, 151 N. Y. 142, 45 N. E. 375, 34 L. R. A. 678, 56 Am. St. Rep. 612? In this case it was said:

"It is at this point, however, that the question of public policy presents, and it may well be asked whether it is not wiser to subject the custodian of the public moneys to the strictest liability, rather than open the door for the perpetration of fraud in numberless ways impossible of detection, thereby placing in jeopardy the enormous amount of the public funds constantly passing through the hands of disbursing agents. Without regard to decisions outside of our own jurisdiction, we think the weight of the argument, treat-

ing this as an original question, is in favor of the rule of strict liability. which requires a public official to assume all risks of loss, and imposes upon him the duty to account as a debtor for the funds in his custody."

Mr. Letts is the custodian and has charge of the official seal of the register, of all of the papers left for record, before they are recorded, and of all papers relating to proceedings for the opening of streets. After the comparers have compared and corrected the record of an instrument, and have initialed it, Mr. Letts affixes the official seal to the instrument, and then presents the same to the register for his signature and his certificate. I think that the mere statement of the duties is sufficient to show that they "involve trust and confidence personal to the register."

Mr. Besserer is a comparer, who, with a fellow, takes the record made by the copyists, and the instrument, and verifies the work, correcting all errors, comparing the book with the instrument, and then certifies the correctness of the record, whereupon, and in reliance of such certification, the official seal of the register is affixed to the instrument, and the certificate of record is also affixed thereto, and signed by the register. This, I think, in the language of Chittenden v. Wurster, supra, is not a position merely clerical, but the duties thereof are those especially devolved on the head of the office, which, by reason of his numerous duties, he is compelled to delegate, the performance of which requires skill, trust, and confidence, and involves the responsibility of the officer. I do not think that the provision of the statute that the register may require bonds from his subordinates should be held as a substitute for the exercise of personal judgment in the selection of subordinates for confidential positions, but rather as a measure for the protection of the register, which is available to him in his discretion.

Of course, any exception to a rule may be made a pretext to violate the rule under cover; and, of course, there have been, and there will be, subterfuges employed to make mere clerical positions appear confidential, with danger to the civil service principle, and with injustice to those who otherwise might compete for them. It is the duty of the courts to be vigilant to detect and to check such wrongs, but I cannot find that these proceedings concern positions whose duties (I care not for the title given to the positions) are not fairly confidential, within the decisions cited in this opinion.

The orders appealed from should be affirmed, without costs. All concur.