THE TRUSTEES OF THE VILLAGE OF BATH, Appellant, *v.* DANIEL J. MCBRIDE et al., Respondents.

Public officers — liability of official having custody of public moneys — liability of such official not affected by fact that moneys were lost without fault or neglect on his part.

1. A public officer having the custody of public moneys is liable unqualifiedly for the loss thereof, and it is no defense to an action on his official bond that the money was lost without fault or neglect on his part.

2. Where a village charter directed its treasurer to receive all moneys belonging to the village and keep an account of receipts and expenditures, he is not relieved from liability for loss of funds deposited in a bank by the fact that the trustees accepted an offer by the bank to pay interest on the funds left with it. (*Tillinghast* v. *Merrill*, 151 N. Y. 135, approved and followed.)

*Village of Bath* v. *McBride*, 163 App. Div. 714, reversed.

(Argued June 5, 1916; decided October 3, 1916.)

APPEAL from a judgment, entered August 22, 1914, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon a decision of the court at a Trial Term without a jury and directing a dismissal of the complaint.

The trustees of the village of Bath seek to recover in this action upon the official bond of Daniel J. McBride, treasurer of the village, for moneys lost through the failure and bankruptcy of the George. W. Hallock Bank. McBride was elected treasurer on March 5, 1912, and on April 2, following, he executed and delivered to the

trustees the bond in suit, which is in the penal sum of $15,000 and is conditioned for the safekeeping and paying over of the moneys in the village hall fund which had been raised for the purpose of building a village hall.

Charles L. Davison, the predecessor in office of the defendant McBride, had received the money in question with other village moneys and had deposited it in the George W. Hallock Bank. The moneys of the village were carried by the bank in several different accounts. One of such accounts was the aforesaid village hall fund, and it amounted on March 6, 1912, to $23,397.18.

No formal transfer of the village funds was made by Davison to McBride, but after the latter's election the accounts of the village treasurer in the books of the bank were kept in the name of McBride. Both Davison and McBride were employees of the bank and one of the village trustees was its cashier. The moneys of the village were deposited by the village collector the same as deposits were made by other persons and they were credited by the bank to the village treasurer in the proper account. Orders drawn by the president and clerk of the village on the treasurer were paid by the bank in the usual course of business. Neither the deposits nor the warrants were necessarily presented to the treasurer.

The bank failed on May 31, 1912. The only moneys credited to the village accounts after the defendant's election and before the bank's failure, were two small deposits amounting to $114.96 — neither of which went into the village hall account. During the same period there was paid out of the village accounts $3,400, some of which was from the village hall fund. At the time of the bank's failure there remained in that fund $21,840.29.

It appeared that on October 20, 1911, the George W. Hallock Bank wrote to the plaintiff the following: "To the Honorable Board of Trustees of the Village of Bath * * * Referring to the matter of interest on account of deposit of village hall funds, I beg to advise you that

we will pay you three per cent for the funds of this account left with us for a period of six months or longer; furthermore, in consideration of the above, we will date the interest on amounts so left back to the time of the original deposit. Trusting this will be entirely satisfactory. I am, Very truly yours, John M. Farr, Assistant Cashier."

On the same day in answer to this letter, the board of trustees adopted the following resolution: " A letter from George W. Hallock Bank was read stating said bank would pay three per cent interest on all village hall funds from time of deposit per quarterly statement. By Trustee Donahee, resolved, that said offer for interest be accepted. Seconded by Trustee Rohan. Carried."

In January, 1912, the account of the village treasurer was credited with $379.25 as interest on the village hall funds. The defendant McBride, so far as it is shown, had no knowledge of the adoption of the resolution as to the payment of interest and the trustees gave him no directions as to the deposit of village funds.

*Fred A. Robbins* and *James McCall* for appellant. The provisions of the General Village Law did not apply to the village of Bath and the trustees were not authorized or directed to designate a bank for the deposit of village funds. (*Vinson* v. *Sewer Commission,* 158 App. Div. 132; *People* v. *Mabie,* 142 N. Y. 343; *Haner* v. *Village of Owego,* 165 App. Div. 734; *Excelsior Pet. Co.* v. *Lacey,* 63 N. Y. 422; *Grimmer* v. *Tenement House Dept.,* 204 N. Y. 370; *People* v. *Wilcox,* 200 N. Y. 423.) Even if the Village Law applied to this case and the Hallock Bank was in fact designated by the trustees as a depository, these facts constitute no defense to the action. (*Tillinghast* v. *Merrill,* 151 N. Y. 135; *Yawger* v. *Am. Surety Co.,* 212 N. Y. 292; *Matter of Hobbs,* 17 Ct. of Cl. Rep. 189; *Wilkesbarre* v. *Rockafellow,* 171 Penn. St. 177.) Even if the Village Law applies to this case there was no such designation of a bank as is contemplated by its pro-

visions and the village is not estopped from denying that such designation was made. (*People* v. *Supervisors,* 14 N. Y. Supp. 867; *Supervisors* v. *Otis,* 62 N. Y. 88; *N. Y. Rubber Co.* v. *Rothery,* 107 N. Y. 310; *Garlinghouse* v. *Whitwell,* 51 Barb. 208.)

*James O. Sebring* for respondents. The George W. Hallock Bank was the depository of the plaintiff. (*Mayor, etc.,* v. *Nat. Broadway Bank,* 10 N. Y. Supp. 555; 126 N. Y. 665.) The defendant McBride was never actually or constructively the custodian or in possession of the village hall funds. (*Lewis* v. *Park Bank,* 42 N. Y. 463; 2 Daly, 85; 30 How. Pr. 115; *Mayor, etc.,* v. *Tradesmen's Nat. Bank,* 11 N. Y. Supp. 95; *Chapman* v. *White,* 6 N. Y. 412; *Board of Supervisors* v. *Bank of Havana,* 5 Hun, 649; 76 N. Y. 598; *Brown* v. *Wyandot Co.,* 58 Kan. 672; *State* v. *Bartley,* 39 Neb. 353; *Matter of State Treasurer,* 51 Neb. 116; *New Haven* v. *Fresenius,* 75 Conn. 145.) Section 81 of the Village Law (Cons. Laws, 1909, chap. 64) in its provisions as to the depository to be used by the village treasurer applies to the plaintiff. (*Visscher* v. *Hudson River R. R. Co.,* 15 Barb. 37; *Clarkson* v. *Hudson River R. R. Co.,* 12 N. Y. 304; *Staats* v. *Hudson River R. R. Co.,* 3 Keyes, 196; *Grimmer* v. *Tenement House Dept.,* 204 N. Y. 370; *Bush* v. *D., L. & W. R. R. Co.,* 166 N. Y. 210; *County of Orange* v. *Elsworth,* 98 App. Div. 275.)

CUDDEBACK, J. This court held in *Tillinghast* v. *Merrill* (151 N. Y. 135) that a public officer having the custody of public moneys is liable unqualifiedly for the loss thereof, and that it is no defense to an action on the official bond that the money was lost without fault or neglect on the part of the officer.

The trial court in this action found that McBride, the village treasurer, had the custody and possession of the village hall fund, and rendered judgment in favor of the village for the amount of the bond with interest. This

judgment was reversed at the Appellate Division and the finding of the trial court as to the custody and possession of the funds by McBride was disapproved, and an affirmative finding was made "that the trustees of the village of Bath on or about October 20, 1911, by resolution, designated the George W. Hallock Bank as depository of the village funds." Such designation, the court held, took the case out of the strict rule of liability laid down in *Tillinghast* v. *Merrill* (*supra*).

I think there was no evidence to support the finding of the Appellate Division and that we must reverse the judgment appealed from. (*Acme Realty Co.* v. *Schinasi*, 215 N. Y. 495; *Hall* v. *O'Brien*, 218 N. Y. 50.)

The only evidence to uphold the finding that the trustees designated the Hallock Bank as the depository of the village funds is the letter from the bank to the village trustees of October 20, 1911, offering to pay the latter three per cent upon the moneys in the village hall fund, and the resolution of the trustees accepting the offer. I have quoted both of these papers in full in the foregoing statement of facts.

It seems to me quite clear that the letter and the reso·lution are utterly insufficient to sustain the determination of the Appellate Division. The law under which the village is incorporated (L. 1895, ch. 785, tit. 4, § 6) provides that "The *treasurer* shall receive all moneys belonging to the village, and keep an accurate account of all receipts and expenditures, in such manner as the board of trustees shall direct. All moneys shall be drawn from the *treasurer*, in pursuance of the order of the board of trustees, by warrants signed by the president or presiding officer of the board, and countersigned by the clerk."

There is nothing in this provision of the village charter which directs the treasurer where he shall keep the moneys belonging to the village, and the use of the word *treasurer* in the last sentence quoted from the statute indicates that the legislature had no intention to give such

direction. All the treasurer is required to do by the charter is to keep his accounts accurately and pay the village money on warrants duly issued by the board of trustees. His bond too was for the safe keeping of the village hall funds and for the keeping of accurate accounts.

Assuming that the board of trustees had power to designate a depository of village money and power to require the treasurer to deposit the money according to such designation, they did not exercise that power.

The trustees undoubtedly expected that the treasurer would leave the funds in the Hallock Bank where they would earn the interest specified in the letter, but there was nothing in the resolution that restrained the treasurer from depositing the funds elsewhere. The letter was nothing more than an offer to pay interest, and the resolution was nothing more than an acceptance of the offer. The defendant, the treasurer, was not informed of either of them.

It seems to have been a case in which the bank itself discharged the duties of village treasurer, and one of its tellers or employees was perhaps put forward to hold the office. The course of business in the bank with reference to the village moneys shows that the defendant McBride held his office more or less as a formality, but though that be so, the court cannot exempt him from the responsibility which he thus assumed. The rule of strict liability laid down in *Tillinghast* v. *Merrill* (*supra*) is a very important one, and it should not be frittered away in seeking to give relief in hard cases.

My conclusion is that the judgment appealed from should be reversed and the judgment of the trial court reinstated, with costs. This conclusion renders it unnecessary to consider the other questions raised by the appellant.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN and CAR-DOZO, JJ., concur; HOGAN, J., absent.

Judgment reversed, etc.